[L. A. No. 8926. Department One.—December 13, 1927.]

HAMMOND LUMBER COMPANY (a Corporation), Appellant, v. BARTH INVESTMENT CORPORATION (a Corporation) et al., Defendants; CARL HELLMAN et al., Respondents.

[1] MECHANICS' LIENS—COMPLETION OF BUILDING — FINDINGS — CONSTRUCTION OF.—Where the finding of the ultimate fact as to the time of completion of the building in a suit to foreclose a mechanic's lien is based upon the probative facts, as specifically set out, and the findings present and dispose of all the facts in the case, the findings of the probative facts, where repugnant to the findings of the ultimate facts, control.

[2] ID.—TRIVIAL IMPERFECTIONS.—In a suit to foreclose a mechanic's lien, where the court found that the owner of the building in construction, after the abandonment by the subcontractor of the electrical work, completed the work in accordance with the plans and specifications and requirements of the city ordinances at a reasonable cost of $260.61, the contract price for the building being $13,500 and for the electrical work $357, the unfinished electrical work did not constitute "trivial imperfections" within the meaning of section 1187 of the Code of Civil Procedure; and where a lien was filed within ninety days after the completion of the electrical work, it was within time, no notice of completion or cessation of labor having been filed by the owner.

[3] ID. — SECTION 1187, CODE OF CIVIL PROCEDURE — CONSTRUCTION — PURPOSE.—The portion of section 1187 of the Code of Civil Procedure providing, in effect, that any trivial imperfection in the work or completion of the contract shall not prevent the filing of a lien was added to the section for the benefit of the lien claimant, and it should be given a reasonably liberal construction with a view to effect its purpose.

[4] ID. — LIENS OF MECHANICS AND MATERIALMEN — REMEDIAL CHARACTER—CONSTITUTION.—Liens of mechanics and materialmen are protected by section 15, article XX, of the state constitution, and the right to assert such a lien is remedial in its character and should be liberally construed in its entirety with a view to effect its objects and to promote justice.

[5] ID.—ACCEPTANCE OF BUILDING—NOTICE.—A secret acceptance by the owner from the contractor of an uncompleted building could

1. See 24 Cal. Jur. 972, 974; 26 R. C. L. 1093.
2. See 17 Cal. Jur. 112.
4. See 17 Cal. Jur. 16; 18 R. C. L. 877.

not defeat the rights of the lien claimant; and a finding that the owners on a certain date notified the contractors that they accepted the building cannot be regarded as a finding that the building was actually completed on that date, where the findings show that the contractors did in fact thereafter complete the building by performing certain work. From the findings themselves the building could not have been accepted as completed on said date.

(1) 40 C. J., p. 190, n. 2; 38 Cyc., p. 1976, n. 34, p. 1986, n. 86. (2) 40 C. J., p. 191, n. 22, p. 205, n. 98.   (3) 38 Cyc., p. 1978, n. 44. (4) 40 C. J., p. 51, n. 60.   (5) 40 C. J., p. 192, n. 24, 35, p. 487, n. 6.

APPEAL from a judgment of the Superior Court of Los Angeles County. Harry A. Hollzer, Judge. Reversed.

The facts are stated in the opinion of the court.

.R. L. Horton for Appellant.

Constan Jensen for Respondents.

SEAWELL, J.—This appeal, which is from the judgment-roll, involves some questions of law similar to those decided in *Hammond Lumber Co.* v. *Barth Investment Corp., ante,* p. 601 [262 Pac. 29], and as to such questions that case is decisive. Carl Hellman and Anna Hellman were owners of a lot situated in the city of Los Angeles. C. A. Barth and Barth Investment Corporation contracted with said owners to erect upon said lot a flat at the cost of $13,500 to said owners. The action was commenced to foreclose a materialman's lien and for a personal judgment against said contractors in the sum of $3,000.17. Judgment went by default against said contractors, but in favor of respondents Hellman for costs of suit. This appeal is taken from that portion of the judgment entered in favor of said respondents.

The questions presented are whether or not the asserted lien of appellant, the materialman, was filed within the statutory time prescribed by section 1187 of the Code of Civil Procedure, and also as to the conclusiveness of certain ultimate findings which are in conflict with certain findings of probative facts. That question is dependent upon the time the building was completed, inasmuch as the owner neglected to file for record notice of the completion of said

improvement contract or a cessation of labor thereon as provided by said section 1187, *supra*. The building contract provided for certain electrical construction or equipment as a part of the building. The electrical work was subcontracted, but the subcontractor, soon after entering upon the performance of his contract, abandoned work thereunder and left it, as found by the court, in "a partially incomplete and unfinished condition." Thereafter the original contractors employed an electrical contractor, one Ingraham, to complete said work. The court further found, as set forth in finding VIIa, that "The said Ingraham, while said owners were in the use, occupation and possession of said structure, did 95 hours' work upon said Hellman flats to correct and complete said electrical work in accord with the plans and specifications and the requirements of the city ordinances of the city of Los Angeles at a reasonable cost of $260.61; that said work was done partially in July, 1922, and was necessary to correct and complete the work in accordance with the plans and specifications; that said work consisted generally of putting in more and heavier wires, and drawing out wires not heavy enough to carry the load; and putting in necessary materials to correct and complete said work; that said work done by the said Ingraham was finished on the eleventh day of July, 1922, except six hours' work that was done on August 16, 1922, and five hours' work on August 17, 1922. That without the work done by said Ingraham, the city electrician's office of the city of Los Angeles refused to accept said work and furnish a final inspector's certificate; that said acceptance by the city and the final certificate of acceptance was not issued by the city until after the 7th day of August, 1922. The original contract for the construction of said building contained the following: 'All work to be installed in accordance with city ordinances furnishing electrical inspector's certificate before work will be accepted.' The court finds that the above work constituted a trivial imperfection; that the contract cost of construction of said flat was $13,500 and that the original contract cost for the installation of the electrical work was $357.00. The city permit granted to said Ingraham to do his work was dated and issued June 5, 1922."

By preceding ultimate findings the court found that said owners did not file for record a notice of the completion of

said building, and that said building contract was completed on June 8, 1922. If the ultimate finding as to the completion should not be permitted to prevail over the conclusion which must be drawn from the probative facts specifically found by the court, and which lead in a contrary direction, the lien of appellant must be held to be a valid and subsisting lien and a reversal of the case must be ordered. The question, therefore, is whether the electrical work performed within the period of ninety days immediately preceding the day on which appellant's lien was filed, to wit, September 15, 1922, constituted the correction of trivial imperfections merely, as found by the court (sec. 1187, Code Civ. Proc.), or whether, as contended by appellant, said work was a material part of the contract which must be performed before it may be claimed that the contract was completed in the sense that the lien claimant is deprived of its lien. "As a general rule findings of ultimate facts may not be impeached, controlled, limited or modified by findings of probative facts, but will control in case of any conflict between them. Findings of probative facts invalidate a finding of an ultimate fact only when the latter is based on the former and is entirely overcome thereby and when the findings of probative facts dispose of all the facts involved in the pleadings." (24 Cal. Jur. 972; *Lee* v. *Hibernia Savings & Loan Soc.*, 177 Cal. 656 [171 Pac. 677]; *Steele* v. *Scott*, 192 Cal. 521 [221 Pac. 342].) So, too, it is the rule that "where the court, in addition to general findings, makes specific findings as to particular averments of the pleadings the latter control in the case of inconsistency." (24 Cal. Jur. 974.) A general finding which is in effect but a conclusion of law is insufficient. (See footnote 16, 24 Cal. Jur. 974.) [1] The findings in the instant case present and dispose of all the facts in the case and the ultimate fact is uncontrovertibly based upon probative facts as specifically set out by the court. If, then, the probative facts, as found by the court, are repugnant to the ultimate fact, that said building was completed prior to the months of July or August, 1922, the latter is invalidated by the former. [2] The question squarely presented is whether, as a matter of law, the greater part of labor done and materials furnished for the completion of the electrical work according to the plans and specifications of the contract, and performed

in July and August, was of the kind and character and of sufficient contractual importance to warrant a finding that the building contract, so far as the materialman's lien was affected thereby, was not completed without the additional labor and material which it was necessary to employ and furnish at a cost of $260 in order to comply with the plans and specifications of the original contract. We are of the view that the work necessary to be done to complete the electrical construction was in no sense a "trivial imperfection." [3] The portion of section 1187 of the Code of Civil Procedure, which the trial court held to be determinative of appellant's rights, provides: "Any trivial imperfection in the said work, or in the completion of any contract by any lien claimant, or in the construction of any building, improvement or structure, . . . shall not be deemed such a lack of completion as to prevent the filing of any lien. . . ."

This provision of the act was added to the earlier act for the *benefit of the lien claimant,* as its language plainly implies, and was enacted in the interest of and for the better protection of the lien claimant against inconsequential imperfections that could be conveniently urged as sufficient reasons to defeat the claimant's lien. So far as the provision affects the lien claimant it must be given a reasonably liberal construction with a view to effect its purpose. [4] In fact, liens of mechanics and materialmen are protected by section 15, article XX, of the state constitution. The right to assert such a lien is remedial in its character and should be liberally construed in its entirety with a view to effect its objects and to promote justice. (*Continental Building & Loan Assn.* v. *Hutton,* 144 Cal. 609 [78 Pac. 21]; *McClung* v. *Paradise etc. Co.,* 164 Cal. 517 [129 Pac. 774]; *Martin* v. *Becker,* 169 Cal. 301 [Ann. Cas. 1916D, 171, 146 Pac. 665].) The function of the legislature is to provide a system through which the right of mechanics and materialmen may be carried into effect, and this right cannot be destroyed or defeated either by the legislature or courts, unless grave reasons be shown therefor. (*Martin* v. *Becker, supra; Hughes Bros.* v. *Hoover,* 3 Cal. App. 145 [84 Pac. 681].)

The original contract cost of the electrical work was $357. The cost of labor and material necessary to complete it and

put it in condition to conform with the plans and specifications was $260.61, a sum $96.39 short of the original cost for the whole work. The court found that the work was done partially in July and was "necessary to correct and complete the work in accordance with the plans and specifications," and further found the work was completed July 11th, except *six* hours' work was done on August 16th and *five* hours' was done on August 17th. It is reasonably certain from the language of the findings that the greater part of the ninety-five hours' work, equaling eleven and seven-eighths days of eight hours each, was performed subsequent to June 17th, which would bring the appellant within the ninety-day statutory requirement. The permit from the city, which was necessary to be obtained before the work was commenced, was not issued to Ingraham until June 5th, and the certificate of acceptance of the work by the city was not issued until August 17th. Any work performed or materials furnished between June 17th and September 15th, the day on which the lien was filed, must be considered as being within section 1187; the only other question is whether it was performed in correcting a trivial imperfection. The work as described in the findings was as necessary and essential to a completion of the contract as any other inside work that was to be done in or upon the building.

The test in such cases is thus stated in *Hammond Lumber Co.* v. *Yeager,* 185 Cal. 355 [197 Pac. 111]: "Are the imperfections in the performance of the work so trivial in character as to permit the contractor to recover for substantial performance?" Applying this test to the completion of the contract as it stood on the eighth day of June, it cannot be doubted that a negative answer must be made to the interrogatory. The work done and the materials furnished in the months of July and August were not to correct *imperfections,* but were necessary to *complete* the work as called for by the plans and specifications.

[5] It is true that the court found that the owners on June 8th "notified said *contractors* that they *accepted said* building." No finding is made that this acceptance was in anywise communicated to the materialman, or that it had any knowledge of said acceptance, or that the building was accepted as *completed.* Of course a secret acceptance by the

owner from the contractor of an uncompleted building could not defeat the lien claimant. If in cases where no notice of completion is filed work should be suspended for a time and later be resumed in execution of the original contract, as in the instant case, the materialman would be entitled to ninety days after the work was finally finished in which to file his lien. But the question of "acceptance" of the building cannot be regarded as a finding that the building was actually completed on June 8th for the reason that the contractors, as shown by the findings, did in fact *thereafter* complete said building by performing the work and furnishing the materials necessary "to correct and complete the work in accord with the plans and specifications." Therefore, from the findings themselves, the building could not have been accepted as *completed* on June 8th.

That portion of the judgment appealed from is reversed.

Preston, J., and Curtis, J., concurred.

Hearing in Bank denied.

All the Justices concurred.